UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

COMMUNICATION WORKERS OF AMERICA,
AFL-CIO; and 1199 SEIU UNITED
HEALTHCARE WORKERS EAST,

                              Petitioners,                    **ORDER**

                    v.
                                                              11-CV-370S
KALEIDA HEALTH,

                              Respondent.


## BACKGROUND

On April 21, 2011, Petitioners commenced a special proceeding in New York State

Supreme Court, County of Erie, pursuant to NY CPLR § 7502(a), by filing an *ex parte*

Order to Show Cause, with Verified Petition.  Therein, Petitioners allege that Respondent's

planned sale or lease of its Judge Joseph H. Mattina Community Health Center (Mattina)

to  Northwest  Community  Health  Center  (Northwest)  violates  the  parties'  collective

bargaining agreements (CBAs).

The New York State Supreme Court issued an *ex parte* restraining order (TRO) on

April 21, 2011, enjoining Respondent from consummating the alleged sale or lease

pending a hearing on Petitioners' motion for a preliminary injunction.  The order also

directed service on Respondent, set a briefing schedule, and scheduled a hearing for May

9, 2011.

Thereafter, on April 29, 2011, Respondent removed the state court action to this

Court on the ground that, under Section 301(a) of the Labor Management Relations Act

1

of 1947 (LMRA), 29 U.S.C. § 185(a), federal courts have jurisdiction over claimed violations of a collective bargaining agreement.

Following removal, on May 9, 2011, Petitioners filed three motions: a motion to extend the *ex parte* temporary restraining order issued in New York State Supreme Court on April 21, 2011  (Docket No. 4); a motion for preliminary injunction (Docket No. 5); and a motion for an expedited hearing on the motions for extension of the TRO and for preliminary injunction (Docket No. 6).  On May 10, 2011, Respondent filed a motion to dismiss the petition and vacate the *ex parte* TRO.  (Docket No. 7.)  This Order addresses the motion for extension of the TRO and sets a schedule for further proceedings.

### TEMPORARY RESTRAINING ORDER

The parties agree that federal law governs the future course of proceedings in this removed action and that the *ex parte* TRO will expire on May 13, 2011, fourteen days from the date of removal.[1]  Petitioners have moved for an extension of the TRO, Respondent has filed its opposition, and Petitioners have filed their reply.  Accordingly, this motion is fully briefed and ready for disposition.

A TRO may be extended by the Court for an additional fourteen days if the extension is entered prior to expiration of the initial TRO, for good cause shown.  FED. R. CIV. P. 65(b)(2).

The relevant facts alleged in the Petition are as follows.  Early in 2011, Petitioners heard rumors that Respondent was planning to sell or lease Mattina to Northwest.  In early

---

[1]  FED. R. CIV. P. 65(b)(2); Carrabus v. Schneider, 111 F. Supp. 2d 204, 210-11 (E.D.N.Y. 2000) (citing Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers, 415 U.S. 423, 439-40, 94 S. Ct. 1113, 39 L. 2d. 2d 435 (1974)).

March 2011, Petitioner Communications Workers of America (CWA) requested information from Respondent including, *inter alia*, "a time line for the transfer of operation/ownership of the Mattina Center to Northwest." (*Id*. ¶ 8, Ex. B.)  In response, Respondent provided a document prepared by Northwest which anticipated a lease/purchase agreement would be finalized in February 2011, that Northwest would have a "[f]inal projection of provider and staff openings" in April 2011, and that it would begin staff recruitment in May 2011. (*Id*. ¶¶ 9-11, Ex. C.)  An April 1, 2011 Buffalo News article reported that Respondent was "in negotiations to lease the [Mattina] building to Northwest Buffalo Community Health Center." (*Id*. ¶ 14.)

When a CWA representative subsequently questioned whether Respondent planned to require Northwest to honor the terms of the CBA, Respondent stated that it did not. (*Id*. ¶¶ 14-15.) Petitioners' grievances, filed on April 15, 2011, allege that the planned sale of Mattina violates the following successorship language in the parties' CBAs:

> The Employer agrees not to sell its business or any portion of its business at any of the Employers [sic] locations covered by this Agreement to a purchaser who would provide health care services without expressly providing in the contract of sale that the purchaser shall be bound by all of the contract rights of the employees under this collective bargaining agreement.

(Petition ¶ 5, Exs. A, D).

Petitioners assert in their Petition, and continue to argue on the instant motion to extend the TRO, that if the CBAs' successorship language is not included in the anticipated lease/purchase, and the transaction is finalized before the pending grievance and arbitration process is concluded, the arbitrator will be without jurisdiction to require specific

3

performance of the new employer, current employees will lose their positions or be subject to unilateral changes in the terms and conditions of employment, and Petitioners will lose their status as exclusive representatives of employees at that site.

In opposing Petitioners' motion to extend the TRO, Respondent concedes that, for a period of several months, it has been discussing a lease of the Mattina site to Northwest, and that those negotiations are ongoing.  (Docket No. 7-2 ¶¶ 2-3.)  However, it goes on to state that, on April 11, 2011, its Board of Directors voted to close the Mattina site, which has been operating at a loss for years, and that its decision to cease operations is not dependant on the outcome of lease negotiations.  (Docket No. 7-1 ¶¶ 4-6.)  Further, Respondent attests that it has not discussed a sale of the Mattina site or operations with Northwest.   (Docket No. 7-2 ¶ 2.)   At this juncture, this latter statement appears inconsistent with Northwest's characterization of the transaction as a "lease/purchase."

"The legal standards for granting a temporary restraining order and a preliminary injunction are the same."  Young-Flynn v. Wright, No. 05 Civ. 1488, 2007 WL 241332, at *7 (S.D.N.Y. Jan. 26, 2007) (quoting Gund, Inc. v. SKM Enters., Inc., No. 01 Civ. 0882, 2001 WL 125366, at *1 (S.D.N.Y. Feb. 14, 2001)).  The movant must demonstrate:

> (1) irreparable harm should the injunction not be granted, and
> (2) either (a) a likelihood of success on the merits, or (b)
> sufficiently serious questions going to the merits and a balance
> of hardships tipping decidedly toward the party seeking
> injunctive relief.

N.A.A.C.P., Inc. v. Town of East Haven, 70 F.3d 219, 223 (2d Cir. 1995) (quoting Resolution Trust Corp. v. Elman, 949 F.2d 624, 626 (2d Cir. 1991)); see also, SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharm., Inc., 211 F.3d 21, 24 (2d Cir.

2000).

The core issue here is whether finalization of a lease/purchase would frustrate the arbitral process on the question of whether, in the context of the transaction(s) under consideration with Northwest, Respondent must require Northwest to be a "successor" to Respondent's CBAs.

Upon consideration of the Petition, and the parties' affidavits and memoranda, Petitioners have sufficiently shown, for purposes of this motion, good cause warranting an extension of the TRO—to wit, the possibility that the arbitral process will be rendered ineffectual, irreparable harm, serious questions going to the merits, and a balance of equities tipping in its favor.   Respondent has raised questions as to whether this controversy is ripe for injunctive relief, and whether Petitioners can ultimately show entitlement to an injunction.  But, based on the notably limited material before the Court at this time, Petitioners have met their burden for an extension.[2]

IT HEREBY IS ORDERED:

1.      Petitioners' motion seeking an extension of the temporary restraining order issued April 21, 2011 by Justice Timothy Drury in New York State Supreme Court is granted, and said order shall remain in full force and effect for fourteen (14) days after its May 13, 2011 expiration date.

---

[2]  Respondent has argued that the state court TRO was unlawfully obtained and, therefore, should be vacated rather than extended.  Without deciding this issue, the Court notes that, were that the case, its findings here would support the imposition of an initial TRO which would then be eligible for an extension upon a showing of good cause.

2.      Respondent shall file its reply in further support of its motion to dismiss no later than

**May 17, 2011**.

3.      The parties shall appear before this Court on **May 25**, **2011** at **9:00 a.m.**  for a Status

Conference.


        SO ORDERED.

Dated: May 12, 2011
        Buffalo, New York


                                        <u>/s/William M. Skretny</u>
                                        WILLIAM M. SKRETNY
                                        Chief Judge
                                        United States District Court